IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| vs. : | |
| : | CRIMINAL NO. 09-294-5 |
| : | |
| JULIUS J. MURRAY : | |

**DEFENDANT JULIUS MURRAY'S SENTENCING MEMORANDUM**

Defendant Julius J. Murray, through his attorney, William Spade, Esquire, submits this memorandum in order to provide information to assist the Court in fashioning a sentence under 18 U.S.C. § 3553(a), as required by *United States v. Booker*, 543 U.S. 220 (2005).

I.     **Procedural and Factual History**

On April 30, 2009, the government indicted defendant Julius Murray and eight other defendants, charging them with conspiracy to commit wire fraud and health care fraud.  The conspiracy centered around a corporation entitled MultiEthnic Behavioral Health, Inc. ("MEBH") which contracted with the City of Philadelphia's Department of Human Services ("DHS") to provide services to needy families through DHS's Services to Children in their Own Homes ("SCOH") program.  The federal government, through the United States Department of Health and Human Services, provided block grants to the City of Philadelphia through the Temporary Assistance to Needy Families ("TANF") program.  These grants were used by the City to pay private contractors such as MEBH who provided SCOH services.  In the time period 2000-2006, MEBH had a series of one-year contracts to provide SCOH services to needy families in Philadelphia.  During this

time, the defendants conspired to bill the City of Philadelphia for services not rendered by fabricating and falsifying records.

After a five-week trial, a jury convicted defendant Murray of Counts 1-12 (wire fraud), Counts 16-18 (health care fraud), and Count 19 (conspiracy to obstruct an investigation of matters within the jurisdiction of an agency of the United States). The jury acquitted defendant Murray on Counts 13-15, which charged health care fraud.

## II.  Post-*Booker* Sentencing Considerations

### A.  Procedural Requirements Post-*Booker*

The Court is no doubt familiar with the procedural requirements of post-*Booker* sentencing, as set forth primarily in the Supreme Court's recent decision in *Rita v. United States*, 127 S.Ct. 2456 (2007) and the Third Circuit's decisions in *United States v. Cooper*, 437 F.3d 324 (3d Cir. 2006) and *United States v. Gunter*, 426 F.3d 237 (3d Cir. 2006). Briefly, sentencing courts must (1) properly calculate the Guidelines range; (2) rule on any departure motions made under the Guidelines; and (3) exercise post-*Booker* discretion by choosing a sentence in light of all relevant Section 3553(a) sentencing factors, "regardless [of] whether [the chosen sentence] varies from the sentence calculated under the Guidelines." *Gunter*, 462 F.3d at 247.

*Gunter*'s step-three, the heart of post-*Booker* sentencing, requires sentencing courts to give full consideration to all relevant provisions of Section 3553(a). While there are no "magic words" to be uttered or set formulas to be followed, the record must "demonstrate that the court considered the [Section] 3553(a) factors and any sentencing grounds properly raised by the parties which have recognized legal merit and factual support in the record." *Cooper*, 437 F.3d at 329. Thus, when presented with a non-

2

frivolous sentencing argument, the Court must give "meaningful consideration" to both the argument itself and the section 3553(a) factors relevant to assessing the argument. *Id*. A rote statement of the Section 3553(a) factors, even when coupled with a sentencing court's acknowledgment of the parties' arguments, is insufficient and leads to reversal. *Id*. at 329& n.6; *United States v. Grier*, 449 F.3d 558, 574-75 (3d Cir., 2007) (*en banc*). Thus, an adequate explanation of the sentence-whether it is within or outside the Guidelines range-must be given.

      B.  Determining the Appropriate Sentence Post-*Booker*

Both the Supreme Court and the Third Circuit have recognized that, post-Booker, Section 3553(a) is comprised of two distinct parts; a sentencing "mandate" contained in the prefatory clause of Section 3553(a) and certain "factors" to be considered in fulfilling that mandate. 18 U.S.C. § 3553(a); *Rita*, *supra*, at 2462; *Gunter*, 462 F.3d at 244 n.9 (distinguishing between Section 3553(a)'s mandate and sentencing factors).

Section 3553(a)'s sentencing mandate requires this Court to impose a sentence "sufficient, but not greater than necessary" to accomplish the four purposes of sentencing set forth in Section 3553(a)(2) -- retribution, deterrence, incapacitation, and rehabilitation. 18 U.S.C. § 3553(a); *Rita*, at 2463 (parsimony provision is a "requirement" of Section 3553(a)); *Gunter*, 462 F.3d at 244 n.9.  In determining the sentence minimally sufficient to accomplish the purposes of sentencing, the Court must consider several "factors" listed in Section 3553(a):

- the nature and circumstances of the offense and the history and characteristics of the defendant;

- the kinds of sentence available;

3

- the Guidelines and policy statements issued by the Sentencing Commission, including the advisory guideline range;

- the need to avoid unwarranted sentencing disparity; and

- the need to provide restitution where applicable.

18 U.S.C. § 3553(a)(1), (a)(3), (a)(5)-(7); *Rita*, at 2463; *Booker*, 543 U.S. at 245; *Cooper*, 437 F.3d at 329; *Gunter*, 462 F.3d at 244 n.9.

### III. The Sentencing Factors as Applied to Mr. Murray

#### A. Defendant's History and Characteristics

Defendant Julius Murray was born in Freetown, Sierra Leone, on July 16, 1957, to a carpenter and a homemaker. Defendant attended the University of Sierra Leone and graduated in 1984 with a degree in chemistry and physics. He then taught school in rural Sierra Leone and Gambia and, according to one of his colleagues, Thomas Kpange, did so with distinction. When he came to the United States, Mr. Murray worked as a printer while attending the University of Maryland from which he graduated with a degree in computer science. He has three children – Nasu, Julius Jr. and Margaret – who describe him as a loving, supportive father.

#### B. Circumstances of the Offense

The Court is familiar with the circumstances of the offense, thus Mr. Murray will not repeat them here.

#### C. Guidelines Range

Mr. Murray has a Criminal History Category of I and a Total Offense Level of 23. His Guidelines range is 46 to 57 months.

**IV.   The Government's Objections to the PSR**

Defendant Murray adopts the Probation Office's response to the government's contention that defendant Murray should receive a four-level enhancement under U.S.S.G. § 3A1.1(b)(2), and a two-level enhancment under U.S.S.G. § 3B1.3.

**V.   The Appropriate Sentence in this Case**

Mr. Murray respectfully requests that the Court impose a sentence within the Guidelines range for reasons that will be presented to the Court at the sentencing hearing on June 11, 2010.

Respectfully Submitted:

/s/ William Spade_____
William Spade, Esquire

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document was served upon the following on June 10, 2010, by electronic mail:

Bea Witzleben
United States Attorney's Office
For the Eastern District of Pennsylvania
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106-4476


DATE: June 10, 2010                     /s/ William Spade_____
                                        William Spade, Esquire